Matthew C. Vella
State Bar No. 314548
mvella@princelobel.com
PRINCE LOBEL TYE LLP
580 Broadway, Unit 207
Laguna Beach, CA 92651
Telephone: (617) 456-8191
Facsimile: (617) 456-8100

Christopher E. Hanba (*pro hac vice* pending)
Texas Bar No. 24121391
chanba@princelobel.com
PRINCE LOBEL TYE LLP
500 W. 5th Street, Suite 1205
Austin, Texas 78701
Telephone.: (512) 737-2414
[Additional Counsel Listed
On Signature Page]

Attorneys for Plaintiff ALPHA MODUS, CORP.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHA MODUS, CORP., <br><br> Plaintiff, <br><br> v. <br><br> ADROIT WORLDWIDE MEDIA, INC., <br><br> Defendant. | Case No.  8:25-cv-02471 <br><br> **PLAINTIFF ALPHA MODUS, CORP'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Adroit Worldwide Media, Inc. ("AWM" or "Defendant") for infringement of United States Patent Nos. 10,977,672 (the "'672 Patent"), 11,042,890 (the "'890 Patent"), 11,301,880

1  (the "'880 Patent"), and 12,354,121 (the "'121 Patent") (collectively the "Patents-in-
2  Suit").

3  **THE PARTIES**

4      1.      Alpha Modus is a corporation organized and existing under the laws of
5  Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North
6  Carolina 28031.

7      2.      Upon information and belief, Defendant Adroit Worldwide Media, Inc. is
8  a corporation organized and existing under the laws of Delaware with a principal place
9  of business located at 26880 Aliso Viejo Pkwy, Suite 150, Aliso Viejo, CA 92656 and
10  may be served with process through its registered agent (and CEO), Kevin Howard,
11  26880 Aliso Viejo Pkwy, Suite 150, Aliso Viejo, CA 92656.

12  **JURISDICTION AND VENUE**

13      3.      This is an action for patent infringement arising under the patent laws of
14  the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281,
15  and 283-285.

16      4.      This Court has exclusive subject matter jurisdiction over this case for
17  patent infringement under 28 U.S.C. §§ 1331 and 1338.

18      5.      This Court has personal jurisdiction over AWM at least because AWM
19  maintains its principal place of business in this District at 26880 Aliso Viejo Pkwy,
20  Suite 150, Aliso Viejo, CA 92656, and engages in continuous and systematic business
21  activities within this District, including conduct giving rise to this action.

22      6.      AWM has conducted and does conduct business within the State of
23  California.

24      7.      AWM has committed, and continues to commit, acts of infringement in
25  this District, has conducted business in this District, and/or has engaged in continuous
26  and systematic activities in this District.

27      8.      This Court has personal jurisdiction over AWM at least because AWM
28  has made, used, offered to sell, sold, or put into service the accused products, systems,

or services within the State of California and, on information and belief, within this District, thus committing acts of infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Central District of California. AWM, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.      This Court likewise has personal jurisdiction over AWM at least because, on information and belief, AWM has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over AWM would not offend traditional notions of fair play and substantial justice.

10.      This Court has specific personal jurisdiction over AWM in this action pursuant to due process and the California Long Arm Statute because the claims asserted herein arise out of or are related to AWM voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b), particularly in light of the fact that AWM has a principal place of business located within this district at 26880 Aliso Viejo Pkwy, Suite 150, Aliso Viejo, CA 92656.

12.    AWM is registered to do business in California, has transacted business in this District, and has committed acts of direct and indirect infringement in this District

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

13.    Alpha Modus Corp. specializes in the development of innovative retail technologies.

14.    At the core of Alpha Modus's technology portfolio, including the Asserted Patents, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

15.    Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Asserted Patents.

16.    Alpha Modus has entered into several intellectual property licensing agreements outside of litigation. These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '672 PATENT

17.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,977,672 (the "'672 Patent") titled "Method And System For Real-Time Inventory Management, Marketing, And Advertising In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '672 Patent is attached to this Complaint at Exhibit A.

18.    The '672 Patent issued from U.S. Patent Application No. 16/985,001 filed on August 4, 2020.

19.    The '672 Patent is a continuation of application No. 16/509,343, filed on

1   Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on

2   Jul. 18, 2014.

3       20.     The Patent Office issued the '672 Patent on April 13, 2021, after a full and

4   fair examination.

5       21.     The '672 Patent is valid and enforceable.

6       22.     The '672 Patent introduces a novel system for real-time inventory

7   management, marketing, and advertising within a retail store setting.

8       23.     The '672 Patent addresses the emerging challenges in the retail sector,

9   particularly for brick-and-mortar stores, in the context of the increasing prevalence of

10  online shopping and the phenomenon of showrooming. The patent provides innovative

11  solutions to enhance in-store customer experiences and counter the competitive

12  pressures from online retail

13      24.     The inventors of the '672 Patent recognized that there existed a significant

14  gap in the brick-and-mortar retail sector's ability to provide real-time, personalized

15  experiences to customers, a feature commonly leveraged by online retailers. The patent

16  offers a method and system that bridges this gap by utilizing technology to analyze

17  consumer behavior and dynamically adjust marketing and inventory strategies.

18      25.     The '672 Patent provides several advantages over the prior art, such as

19  real-time inventory management and the ability to generate targeted promotions and

20  advertising based on behavioral analytics. This approach aims to provide more relevant

21  and engaging consumer experiences, thereby influencing purchasing decisions and

22  potentially increasing in-store sales.

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



FIG. 1



FIG. 2

26.    The '672 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, display relevant product information and pricing, and generate promotions for customers based on real-time data analysis.

27.    Claim 1 of the '672 Patent reads:

1. A system for real-time inventory management, marketing, and advertising on a first visual display at a first visual display location in a retail store, comprising:
(a) a server comprising:
        (i) one or more server processors, and,
        (ii) a server memory storing computer-executable instructions
            that, when executed by the one or more server processors,
            cause the server to:

(A) identify, via image recognition, an inventory of one or more retail products physically located at the first visual display location in the retail store,

(B) display, on the first visual display, information about one or more of the one or more retail products physically located at the first visual display location,

(C) determine, in real-time, current pricing information regarding the one or more retail products physically located at the first visual display location,

(D) display, on the first visual display, the current pricing information regarding the one or more retail products physically located at the first visual display location,

(E) receive, using one or more information monitoring devices at the first visual display location, real-time data of a customer, and

(F) generate a promotion of one or more of the one or more retail products physically located at the first visual display location for the customer based on behavioral analytics.

## THE '890 PATENT

28.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit B.

29.    The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

30.    The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

31.    The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

32. The '890 Patent is valid and enforceable.

33. The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

34. The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

35. The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.

36. The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

37. Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a person at a retail store, wherein
    (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and
    (iii) the step of gathering information using the one or more information monitoring devices comprises
        (A) gathering object identification information of a product that the person is interested in purchasing, and

(B) gathering sentiment information of the person with respect to the product;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

(ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

(iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

(iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

(v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '880 PATENT

38.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method And System For Inventory Management In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit C.

39.    The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

40.    The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

41.    The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair examination.

42.    The '880 Patent is valid and enforceable.

43.    The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

44.    The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

45.    The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

46.    The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.

47.    The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management

based on data analysis.

48. Claim 1 of the '880 Patent reads:

1. A method comprising:

(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein

(i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,

(ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

(iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;

(iv) the one or more information monitoring devices comprise one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises

(A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

(B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

> (i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,
> (ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,
> (iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and
> (iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

## THE '121 PATENT

49.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,354,121 (the "'121 Patent") titled "Method And System For Shopping In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '121 Patent is attached to this Complaint at Exhibit D.

50.    The '121 Patent issued from U.S. Patent Application No. 18/651,410 filed on April 30, 2024, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

51.    The Patent Office issued the '121 Patent on July 8, 2025, after a full and fair examination.

52.    The '121 Patent is valid and enforceable.

53.    The '121 Patent introduces a novel system for tracking customer movement, for tracking products retained while shopping, for tracking to a point-of-sale area, and for interfacing with this information in the point-of-sale area for payment of the products.

54.    The '121 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring products retained for purchase and for allowing purchase of the products by the shopper within the point-

of-sale area. The patent provides innovative solutions to enhance in-store customer experiences and to increase the speed and efficacy of the shopper's purchase transaction.

55.    The inventors of the '121 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the shopper's purchase experience in a retail store by recording the users location during shopping, the items retained by the customer for purchase, and then providing a seamless purchase experience for the shopper at the point-of-sale area of the retail store.

56.    The '121 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the speed and ease of the customer's purchase experience.



FIG. 1



FIG. 2

57.     The '121 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and items selected for purchase, maintain a list of items selected for purchase, and providing for purchase of such items in the point-of-sale area of the retail store.

58.     Claim 1 of the '121 Patent reads:

1. A method comprising using a system comprising a server, one or more information monitoring devices, and one or more databases, wherein the method comprises:

(a) using at least one of the one or more information monitoring devices to identify a first person at a retail store, wherein

    (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,

    (ii) the one or more first information monitoring devices are selected from a group consisting of computing devices, user input and output devices, displays, POS devices, cameras, sensors; WIFI devices; in-store customer devices; output devices; system for communicating to user devices, and kiosks, and

    (iii) the one or more information monitoring devices are operably connected to (A) the server, (B) the one or more databases, or (C) both;

(b) using at least one of the one or more of the information monitoring devices to gather shopping information of the first person at the retail store, wherein

    (i) the gathered shopping information comprises gathered traffic information of the first person, wherein

        (A) the gathered traffic information comprises traffic information of the first person gathered by at least one of the one or more information monitoring devices, and

        (B) the traffic information comprises identification of one or more stops that the first person makes within and about the retail store,

    (ii) the gathered shopping information further comprises gathered product interaction information of the first person at the retail store, wherein

        (A) the gathered product interaction information comprises product interaction information of the first person

gathered by at least one of the one or more information monitoring devices, and

(B) the product interaction information is based upon type of product interactions the first person had with one or more products at the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products viewed by the first person at the retail store at each of the one or more stops, (II) the one or more products picked up by the first person at the retail store at each of the one or more stops, (III) the one or more products put down by the first person at the retail store at each of the one or more stops, ((IV) the one or more products carried away by the first person at the retail at each of the one or more stops, and (V) combinations thereof, and

(iii) the gathered shopping information further comprises gathered object identification information, wherein

(A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

(B) the object identification information comprises the one or more products that the first person interacted with during the product interactions; and

(c) analyzing by the system, in real time, the gathered shopping information to generate and maintain a list of the one or more products that the first person interacted with during the product interactions, wherein the list comprises a listing of the products retained by the first person while shopping at the retail store;

(d) using the one or more of the information monitoring devices to track the first person to a point-of-sale area of the retail store;

(e) in response to the first person being tracked to the point-of-sale area, interfacing the system, in real time, with a payment system for payment by the first person of the list of the products retained by the first person while shopping at the retail store at the point-of-sale area; and

(f) transmitting a receipt to the first person after payment by the first person, wherein the receipt comprises the list of the products purchased at the retail store.

**AWM**

59.    AWM is a vision technology company providing technology used by retailers to improve operational efficiency, increase sales, and reduce waste.

60.    AWM states that its "technologies are built utilizing artificial intelligence, computer vision, machine learning and deep learning to reinvent the retail space and beyond as we know it today."  https://www.awm.tech/.

61.    For purposes of this action, the Accused Products include, without limitation: (a) AWM's Frictionless cashierless checkout technology; (b) AWM's Smart Shelf solutions and technology; (c) AWM's Automated Inventory Intelligence (Aii®) technology;  (d) AWM's User Portal management system software; (e) AWM's FAE Frictionless Analytics Engine software; (f) AWM's Facial Wallet technology; and (g) AWM's retail data engine and demographics engine software, systems, and technologies (collectively, the "Accused Products").

62.    The Accused Products practice the patented systems and methods of the Asserted Patents.

63.    AWM has been awa`re of Alpha Modus and the Asserted Patents at least as early as the filing of this Complaint.

64.    The financial gains accrued by AWM through the use of Alpha Modus's patented technology have been substantial, providing AWM with competitive advantages in the retail market.

65.    The benefits reaped by AWM through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

66.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by AWM, which has led to significant commercial gains for AWM at the expense of Alpha Modus's proprietary rights and investments.

# COUNT I

## (DIRECT INFRINGEMENT OF THE '672 PATENT)

67.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

68.    AWM has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '672 Patent, including the Accused Products.

69.    The Accused Products embody a system for real-time inventory management, marketing, and advertising in a retail store setting, as claimed in the '672 Patent.

70.    For example, AWM's Smart Shelf product and Automated Inventory Intelligence products automatically track product inventory for products stocked within the AWM Smart Shelf product. *See* https://www.youtube.com/watch?v=YTXJplq_ufc.

71.    As another example, AWM's Smart Shelf product provides marketing and advertising information to consumers in proximity to AWM's Smart Shelf. "The prommotional state calls out each product on the shelves, allowing for product specific advertising. This state triggers as shoppers get closer to the display." *See* https://www.awm.tech/index-interactive.html.

72.    AWM's Smart Shelf and Automated Inventory Intelligence products utilize image recognition to identify an inventory of products physically located at the Smart Shelf. *See* https://awm.tech/retail_solutions.html ("With the implementation of AWM's Fascia in a retail environment and utilizing AWM's super-wide-angle low light HD cameras, AWM's Automated Inventory Intelligence (Aii®) solution can view and track virtually any product or UPC in a retail environment.").

73.    AWM's Smart Shelf product provides real-time pricing information for the products located in the Smart Shelf. "Once the shopper has made their way to the display, the product information appears directly beneath the products. This can

1 include SKU's, prices, and sales promotion." *See* https://www.awm.tech/index-
2 interactive.html.

3     74.   AWM's Shopper Demographics Engine provides real-time data of
4 customers. "Our cameras on each display gather customer demographics without
5 requiring them to manually provide it. Your content can be demographic specific to
6 ensure the best messaging is seen for each shopper." *See* https://www.awm.tech/index-
7 interactive.html.

8     75.   AWM has directly infringed the '672 Patent in violation of 35 U.S.C. §
9 271(a) by making, using, offering for sale, selling, and/or operating the Accused
10 Products that embody the patented inventions of at least Claim 1 of the '672 Patent.

11     76.   The Accused Products satisfy each and every element of the asserted
12 claims of the '672 Patent either literally or under the doctrine of equivalents.

13     77.   AWM's infringing activities are and have been without authority or
14 license under the '672 Patent.

15     78.   As a direct and proximate result of AWM's infringement of the '672
16 Patent, Alpha Modus has suffered and will continue to suffer damage.

17     79.   Alpha Modus is informed and believes, and on that basis alleges, that
18 AWM has been aware of the '672 Patent and its infringement thereof. Despite this
19 knowledge, AWM has continued to make, use, sell, and offer for sale the Accused
20 Products.

21     80.   Alpha Modus is informed and believes that AWM knew or was willfully
22 blind to the patented technology of the '672 Patent. Despite this knowledge or willful
23 blindness, AWM has acted with blatant disregard for Alpha Modus's patent rights with
24 an objectively high likelihood of infringement.

25     81.   Alpha Modus is informed and believes that AWM has made no efforts to
26 avoid infringement of the '672 Patent, despite its knowledge and understanding that its
27 products and systems infringe the '672 Patent.

28     82.   Therefore, AWM's infringement of the '672 Patent is willful and

1  egregious, warranting an enhancement of damages.

2  83.    As such, AWM has acted and continues to act recklessly, willfully,

3  wantonly, deliberately, and egregiously in infringement of the '672 Patent, justifying

4  an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys'

5  fees and costs incurred under 35 U.S.C. § 285.

6  ## COUNT II

7  ## (INDUCED PATENT INFRINGEMENT OF THE '672 PATENT)

8  84.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully

9  set forth herein, the allegations of the preceding paragraphs.

10  85.    AWM is liable for indirect infringement under 35 U.S.C. § 271(b) of at

11  least one claim of the '672 Patent, at least as early as the filing of this Complaint,

12  because it knowingly induces, aids, and directs others to use the Accused Products in

13  a manner that infringes the '672 Patent.

14  86.    AWM has implemented and utilized the Accused Products in its

15  customers' stores, which practice the patented methods of the '672 Patent.

16  87.    AWM's use of the Accused Products demonstrates specific intent to

17  induce infringement of the '672 Patent. AWM encourages, directs, aids, and abets the

18  use and operation of the Accused Products in a manner that infringes the '672 Patent.

19  88.    AWM's knowledge of the '672 Patent, combined with its ongoing making

20  of, use of, sale of, and offers to sell of the Accused Products, demonstrates AWM's

21  knowledge and intent that the Accused Products be used in a manner that infringes the

22  '672 Patent.

23  89.    AWM's actions and the manner in which the Accused Products are used

24  in AWM's customers' stores, consistent with AWM's instructions, demonstrate

25  AWM's specific intent to induce infringement of the '672 Patent.

26  90.    Alpha Modus is informed and believes, and on that basis alleges, that

27  AWM knew or was willfully blind to the fact that it was inducing others, including its

28  customers and staff, to infringe by practicing, either themselves or in conjunction with

AWM, one or more claims of the '672 Patent.

91.    As a direct and proximate result of AWM's induced infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

92.    Alpha Modus is entitled to recover from AWM compensation in the form of monetary damages suffered as a result of AWM's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

93.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

94.    AWM has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the Accused Products.

95.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

96.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.  For example, AWM's Shopper Demographics Engine gathers information about customers in a retail store.  "Our cameras on each display gather customer demographics without requiring them to manually provide it. Your content can be demographic specific to ensure the best messaging is seen for each shopper."  *See* https://www.awm.tech/index-interactive.html.

97.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.  For example, AWM's Smart Shelf automatically tracks product inventory for products stocked in the AWM Smart Shelf.  *See*

https://www.youtube.com/watch?v=YTXJplq_ufc. As another example, AWM's Retail Data Engine collects the length of time a "shopper [is] in front of the display and shopping habits. This information can be used to inform business and marketing decisions." *See* https://www.awm.tech/index-interactive.html.

98.    The Accused Products analyze the information in real time and generate a list of products retained by the shopper.  For example, AWM's Frictionless Shopping product "determines when customers interact with products & whether to add or subtract that item from their cart." *See* https://awm.tech/frictionless-shopping.html.

99.    As another example, AWM's Smart Shelf product is able to track the amount of inventory for products located in the shelf, and provide alert notifications when the quantity of such products falls below threshold values.  *See* https://www.youtube.com/watch?v=YTXJplq_ufc;    *see    also* https://awm.tech/retail_solutions.html ("AWM's Automated Inventory Intelligence (Aii®) solution can view and track virtually any product or UPC in a retail environment. It is highly accurate, and results can be provided as quickly as near-real-time and as frequently as hourly or even in response to shopper activity. It is simply the most robust inventory tool available.")

100.    AWM's Smart Shelf product provides real-time pricing information for the products located in the Smart Shelf.  "Once the shopper has made their way to the display, the product information appears directly beneath the products.  This can include SKU's, prices, and sales promotion." *See* https://www.awm.tech/index-interactive.html.

101.    As another example, AWM's Smart Shelf product provides marketing and advertising information to consumers in proximity to AWM's Smart Shelf.  "The prommotional state calls out each product on the shelves, allowing for product specific advertising.  This state triggers as shoppers get closer to the display." *See* https://www.awm.tech/index-interactive.html.

102.    AWM has directly infringed the '890 Patent in violation of 35 U.S.C. §

271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

103.   The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

104.   AWM's infringing activities are and have been without authority or license under the '890 Patent.

105.   As a direct and proximate result of AWM's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

106.   Alpha Modus is informed and believes, and on that basis alleges, that AWM has been aware of the '890 Patent and its infringement thereof.  Despite this knowledge, AWM has continued to make, use, sell, and offer for sale the Accused Products.

107.   Alpha Modus is informed and believes that AWM knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, AWM has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

108.   Alpha Modus is informed and believes that AWM has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

109.   Therefore, AWM's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

110.   As such, AWM has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

111.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

112.    AWM is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

113.    AWM has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '890 Patent.

114.    AWM's use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. AWM encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

115.    AWM's knowledge of the '890 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates AWM's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

116.    AWM's actions and the manner in which the Accused Products are used in AWM's customers' stores, cons`istent with AWM's instructions, demonstrate AWM's specific intent to induce infringement of the '890 Patent.

117.    Alpha Modus is informed and believes, and on that basis alleges, that AWM knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with AWM, one or more claims of the '890 Patent.

118.    As a direct and proximate result of AWM's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

119.    Alpha Modus is entitled to recover from AWM compensation in the form

of monetary damages suffered as a result of AWM's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '880 PATENT)

120.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

121.    AWM has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the Accused Products.

122.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

123.    The Accused Products include video image devices. *See* https://awm.tech/retail_solutions.html (identifying the use of "super-wide-angle low light HD cameras"); *see also* https://www.youtube.com/watch?v=YTXJplq_ufc (showing the use of cameras located near the back of the Smart Shelf product for monitoring products located in the Smart Shelf.

124.    The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.  For example, AWM's Shopper Demographics Engine gathers information about customers in a retail store.  "Our cameras on each display gather customer demographics without requiring them to manually provide it. Your content can be demographic specific to ensure the best messaging is seen for each shopper."    *See* https://www.awm.tech/index-interactive.html.

125.    The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering object identification information for the products that the

1  persons interacted with during the product interactions.  For example, AWM's Smart
2  Shelf automatically tracks product inventory for products stocked in the AWM Smart
3  Shelf.  *See* https://www.youtube.com/watch?v=YTXJplq_ufc. As another example,
4  AWM's Retail Data Engine collects the length of time a "shopper [is] in front of the
5  display and shopping habits. This information can be used to inform business and
6  marketing decisions." *See* https://www.awm.tech/index-interactive.html.  As another
7  example, AWM's frictionless shopping technology uses "deep learning models trained
8  on product and positioning data from our Product Mapper software . . . [and]
9  determines when customers interact with products & whether to add or subtract that
10  item from their cart."  https://awm.tech/frictionless-shopping.html.

11      126.   AWM's Smart Shelf product is able to track the amount of inventory for
12  products located in the shelf, and provide alert notifications when the quantity of such
13  products        falls        below        threshold        values.        *See*
14  https`://www.youtube.com/watch?v=YTXJplq_ufc;        *see*        *also*
15  https://awm.tech/retail_solutions.html ("AWM's Automated Inventory Intelligence
16  (Aii®) solution can view and track virtually any product or UPC in a retail
17  environment. It is highly accurate, and results can be provided as quickly as near-real-
18  time and as frequently as hourly or even in response to shopper activity. It is simply
19  the most robust inventory tool available.")

20      127.   AWM has directly infringed the '880 Patent in violation of 35 U.S.C. §
21  271(a) by making, using, offering for sale, selling, and/or operating the Accused
22  Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

23      128.   The Accused Products satisfy each and every element of the asserted
24  claim of the '880 Patent either literally or under the doctrine of equivalents.

25      129.   AWM's infringing activities are and have been without authority or
26  license under the '880 Patent.

27      130.   As a direct and proximate result of AWM's infringement of the '880
28  Patent, Alpha Modus has suffered and will continue to suffer damage.

131.   Alpha Modus is informed and believes, and on that basis alleges, that AWM has been aware of the '880 Patent and its infringement thereof.  Despite this knowledge, AWM has continued to make, use, sell, and offer for sale the Accused Products.

132.   Alpha Modus is informed and believes that AWM knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, AWM has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

133.   Therefore, AWM's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

134.   As such, AWM has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha

135.   Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

### (INDUCED PATENT INFRINGEMENT OF THE '880 PATENT)

136.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

137.   AWM is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

138.   AWM has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '880 Patent.

139.   AWM's use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. AWM encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '880 Patent.

140.   AWM's knowledge of the '880 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates AWM's knowledge and intent that the Accused Products be used in a manner that infringes the '880 Patent..

141.   AWM actions and the manner in which the Accused Products are used in AWM's customers' stores, consistent with AWM's instructions, demonstrate AWM's specific intent to induce infringement of the '880 Patent.

142.   Alpha Modus is informed and believes, and on that basis alleges, that AWM knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with AWM, one or more claims of the '880 Patent.

143.   As a direct and proximate result of AWM's induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

144.   Alpha Modus is entitled to recover from AWM compensation in the form of monetary damages suffered as a result of AWM's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII
## (DIRECT INFRINGEMENT OF THE '121 PATENT)

145.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

146.   AWM has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '121 Patent, including the Accused Products.

147.   The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the Accused Products in a retail store setting, as claimed in the '121 Patent.

148.   The Accused Products include the use of one or more information

monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent. For example, AWM's Shopper Demographics Engine gathers information about customers in a retail store. "Our cameras on each display gather customer demographics without requiring them to manually provide it. Your content can be demographic specific to ensure the best messaging is seen for each shopper." *See* https://www.awm.tech/index-interactive.html.

149. The Accused Products identify and gather traffic information of the shoppers within the retail store. For example, AWM's Frictionless Shopping technology and product assigns an ID to a customer when the customer enters the retail store. *See* https://awm.tech/frictionless-shopping.html ("When a shopping session is started, customers are assigned a random ID. A central server uses this to track each shopper throughout the store as they pass through from camera to camera.").

150. The Accused Products gather shopping information of shoppers within the retail store in order to, for example, determine whether and what products should be added or deleted from the digital cart associated with the shopper using information gathered from the information monitoring devices. *See* https://awm.tech/frictionless-shopping.html ("Using deep learning models trained on product and positioning data from our Product Mapper software, the system determines when customers interact with products & whether to add or subtract that item from their cart.").

151. The Accused Products identify stops that the shopper makes within the retail store. *See* https://www.awm.tech/index-interactive.html ("Some of the data collected is how long the shopper was in front of the display and shopping habits. This information can be used to inform business and marketing decisions.").

152. The Accused Products are capable of tracking the shopper to a point-of-sale area where the system interfaces with a payment system for payment of the products retained by the shopper for purchase. *See* https://awm.tech/frictionless-shopping.html ("Upon leaving the store (or designated Frictionless area) customers are charged via their digital wallet, receiving a receipt via email or text. In other

1   configurations, a POS kiosk may auto-populate the customer's cart for checkout,

2   allowing use of conventional payment methods such as cash, credit, etc."). A receipt

3   is transmitted to the shopper in response to payment. *Id*.; *see also*

4   https://www.youtube.com/watch?v=2ISWeI0yL7U (showing transmission of a receipt

5   to the shopper's mobile device).

6      153. AWM has directly infringed the '121 Patent in violation of 35 U.S.C. §

7   271(a) by making, using, offering for sale, selling, and/or operating the Accused

8   Products that embody the patented inventions of at least Claim 1 of the '121 Patent.

9      154. The Accused Products satisfy each and every element of the asserted

10   claims of the '121 Patent either literally or under the doctrine of equivalents.

11      155. AWM's infringing activities are and have been without authority or

12   license under the '121 Patent.

13      156. As a direct and proximate result of AWM's infringement of the '121

14   Patent, Alpha Modus has suffered and will continue to suffer damage.

15      157. Alpha Modus is informed and believes, and on that basis alleges, that

16   AWM has been aware of the '121 Patent and its infringement thereof. Despite this

17   knowledge, AWM has continued to make, use, sell, and offer for sale the Accused

18   Products.

19      158. Alpha Modus is informed and believes that AWM knew or was willfully

20   blind to the patented technology of the '121 Patent. Despite this knowledge or willful

21   blindness, AWM has acted with blatant disregard for Alpha Modus's patent rights with

22   an objectively high likelihood of infringement.

23      159. Alpha Modus is informed and believes that AWM has made no efforts to

24   avoid infringement of the '121 Patent, despite its knowledge and understanding that its

25   products and systems infringe the '121 Patent.

26      160. Therefore, AWM's infringement of the '121 Patent is willful and

27   egregious, warranting an enhancement of damages.

28      161. As such, AWM has acted and continues to act recklessly, willfully,

wantonly, deliberately, and egregiously in infringement of the '121 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**COUNT VIII**

**(INDUCED PATENT INFRINGEMENT OF THE '121 PATENT)**

162.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

163.   AWM is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '121 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '121 Patent.

164.   AWM has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '121 Patent.

165.   AWM's use of the Accused Products demonstrates specific intent to induce infringement of the '121 Patent. AWM encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '121 Patent.

166.   AWM's knowledge of the '121 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates AWM's knowledge and intent that the Accused Products be used in a manner that infringes the '121 Patent.

167.   AWM's actions and the manner in which the Accused Products are used in AWM's customers' stores, consistent with AWM's instructions, demonstrate AWM's specific intent to induce infringement of the '121 Patent.

168.   Alpha Modus is informed and believes, and on that basis alleges, that AWM knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with AWM, one or more claims of the '121 Patent.

169.   As a direct and proximate result of AWM's induced infringement of the

1  '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

2      170.   Alpha Modus is entitled to recover from AWM compensation in the form

3  of monetary damages suffered as a result of AWM's infringement in an amount that

4  cannot be less than a reasonable royalty, together with interest and costs as fixed by

5  this Court.

## JURY DEMAND

7      Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to

8  Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

10      WHEREFORE, Alpha Modus prays for relief against AWM as follows:

(A)  An entry of judgment that AWM has infringed and is directly infringing one or more claims of each of the '672 Patent, the '890 Patent, the '880 Patent, and the '121 Patent;

(B)  An entry of judgment that AWM has infringed and is indirectly infringing one or more claims of each of the '672 Patent, the '890 Patent, the '880 Patent, and the '121 Patent;

(C)  An entry of judgment that the '672 Patent, the '890 Patent, the '880 Patent, and the '121 Patent are valid and enforceable;

(D)  An order pursuant to 35 U.S.C. § 283 permanently enjoining AWM, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the '672 Patent, the '890 Patent, the '880 Patent, and the '121 Patent;

(E)  An order awarding damages sufficient to compensate Alpha Modus for AWM's infringement of the '672 Patent, the '890 Patent, the '880 Patent, and the '121 Patent, but in no event less than a reasonable royalty, together with interest and costs;

(F)     A determination that AWM's infringement has been willful, wanton, deliberate, and egregious;

(G)     A determination that the damages against AWM be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)     A finding that this case against AWM is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)     An accounting of all infringing sales and revenues of AWM, together with post judgment interest and prejudgment interest from the first date of infringement of the '672 Patent, the '890 Patent, the '880 Patent, and the '121 Patent; and

(J)     Such further and other relief as the Court may deem proper and just.

\* \* \* \*

\* \* \* \*

\* \* \* \*

\* \* \* \*

1  Dated: November 3, 2025                    PRINCE LOBEL TYE LLP

2

3                                            */s/ Matthew D. Vella*

4                                                Matthew D. Vella
                                                 California Bar No. 314548
5                                                PRINCE LOBEL TYE LLP
                                                 580 Broadway, Unit 207
6                                                Laguna Beach, CA 92651
7                                                Tel.: (617) 456-8191
                                                 Fax:  (617) 456-8100
8

9                                                Christopher E. Hanba (*pro hac vice* pending)
                                                 Texas Bar No. 24121391
10                                               chanba@princelobel.com
11                                               Ariana D. Pellegrino (*pro hac vice* pending)
                                                 Michigan Bar No. P79104
12                                               apellegrino@princelobel.com
13                                               Joshua G. Jones (*pro hac vice* pending)
                                                 Texas Bar No. 24065517
14                                               jjones@princelobel.com
15                                               Bryan D. Atkinson (*pro hac vice* pending)
                                                 Texas Bar No. 24036157
16                                               batkinson@princelobel.com
17
                                                 PRINCE LOBEL TYE LLP
18                                               500 W. 5th Street, Suite 1205
19                                               Austin, Texas 78701
                                                 Tel.: (512) 737-2414
20

21                                               *Attorneys for Plaintiff Alpha Modus, Corp.*

22

23

24

25

26

27

28